# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00086-CV

**Franklin Barnum, Appellant**

**v.**

**Michele Ngakoue, Appellee**

## NO. 03-09-00087-CV

**Texas Adjutant General's Office, Appellant**

**v.**

**Michele Ngakoue, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY**
**NO. C-1-CV-08-010645, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Michele Ngakoue sued Franklin Barnum for injuries and damage sustained during a car accident. At the time of the accident, Barnum was working for the Texas Adjutant General's Office ("Adjutant General"). *See* Tex. Gov't Code Ann. §§ 431.021-.038 (West 2005 & Supp. 2010) (establishing office of Adjutant General). Shortly after Ngakoue filed suit, Barnum filed a motion to dismiss himself from the case. Ultimately, Ngakoue amended his pleadings and named the Adjutant General as a defendant. After being named in the suit, the Adjutant General filed a plea

to the jurisdiction and motion to dismiss asserting that the suit against it and Barnum should be dismissed. The trial court denied both Barnum's motion to dismiss and the Adjutant General's plea and motion to dismiss, and Barnum and the Adjutant General challenge the district court's orders on appeal. We will reverse the district court's order denying Barnum's motion to dismiss and affirm the order denying the Adjutant General's plea and motion to dismiss.

**STATUTORY FRAMEWORK**

Before addressing the background or issues involved in this appeal, we provide a summary of the relevant statutory framework governing this case. Under Texas law, governmental entities are immune from suit unless the State has consented to suit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004); *see Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (explaining that trial courts have no subject matter jurisdiction over suits against State in absence of State's consent). By enacting the Texas Tort Claims Act (the "Act"), the legislature agreed to waive sovereign immunity for certain claims. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 2005 & Supp. 2010) (containing provisions of Act); *see also id.* § 101.025 (West 2005) (waiving immunity "to the extent of liability created by" Act). The Act establishes the circumstances in which a governmental entity may be held liable for the negligent acts of its employees. *Id.* § 101.021 (West 2005). In relevant part, the Act states that a governmental employer is liable for damages "caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if" the damages arise "from the operation or use of a motor-driven vehicle or motor-driven equipment." *Id.*; *see also id.* § 101.001(2) (West 2005)

2

(defining "employee" as "a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control").

As a tort-reform measure, the legislature significantly revised section 101.106 of the Act. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.05, 2003 Tex. Gen. Laws 847, 886. The new provision is entitled "Election of Remedies," and it sets out the potential consequences stemming from a plaintiff's decision to sue a governmental employer, its employee, or both. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (West 2005). The provision forces plaintiffs "to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). The purpose of this election is to reduce the "resources that the government and its employees must use in defending redundant litigation." *Id.*

As a result of the amendment, "a plaintiff is no longer able to include every potential tortfeasor in a suit, argue alternative theories of recovery based on the same conduct, and allow a fact finder to decide which party was the wrongdoer." *Huntsville Indep. Sch. Dist. v. Briggs*, 262 S.W.3d 390, 393 (Tex. App.—Waco 2008, pet. denied). Essentially, "a plaintiff must choose whether he would seek to impose tort liability on a governmental unit or on a governmental employee." *Id.* If a plaintiff is unwise in his choice of what party to sue, he faces a potential bar to recovery from both the employee and the governmental employer. *Id.*

The legislative intent to force a plaintiff to carefully choose whether to sue a governmental employer or its employee is evidenced by the language of the six subsections of section 101.106. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (delineating effects of decision to file suit against employee or employer and from obtaining settlement with or judgment against employee or employer). The two subsections of 101.106 that bear upon this appeal are subsections 101.106(b) and 101.106(f). Subsection 101.106(b) governs circumstances in which a plaintiff sues a governmental employee and provides that "[t]he filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents." *Id.* § 101.106(b); *see id.* § 101.001(3) (West 2005) (defining "governmental unit"). Subsection 101.106(f) also governs circumstances in which a plaintiff has elected to sue a governmental employee, but it also provides the employee with the ability to be dismissed from the suit against him in certain circumstances. In particular, the provision provides as follows:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. *On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.*

*Id.* § 101.106(f) (emphasis added); *see also Franka v. Velasquez*, No. 07-0131, 2011 Tex. LEXIS 70, at *21, 31, 33, 51 (Tex. Jan. 21, 2011) (explaining that "any tort claim against the government is brought 'under' the Act for purposes of section 101.106, even if the Act does not waive immunity"

for tort alleged, and "that suit is brought under the Act when it is filed, not when waiver of immunity by the Act is established").

**BACKGROUND**

With the preceding in mind, we now turn our discussion to the events leading up to this appeal. Ngakoue and Barnum were involved in a car accident in Austin, Texas. After the accident, Ngakoue sued Barnum claiming that Barnum's negligence caused the accident.

In response to the suit, Barnum filed a motion to dismiss the suit against him under subsection 101.106(f), arguing that he was employed by the Adjutant General at the time of the accident, that he was acting within the general course and scope of his employment at the time of the accident, and that the suit could have been filed against the Adjutant General. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). Approximately two weeks later, Ngakoue filed an amended petition that also named the State and the Adjutant General as defendants. The petition was entitled "Plaintiff's First Amended Petition & Motion to Dismiss as to Defendant Franklin Barnum." Several months after the amended petition was filed, the trial court denied Barnum's motion to dismiss.

After Barnum's motion to dismiss was denied, the Adjutant General filed a plea to the jurisdiction and motion to dismiss, arguing that Ngakoue's suit against the Adjutant General and Barnum should be dismissed under subsections 101.106(b) and 101.106(f). *See id.* § 101.106(b), (f). Ultimately, the trial court denied the plea and motion to dismiss. Barnum appealed the trial court's denial of his motion to dismiss, and the Adjutant General appealed the trial court's denial of its plea to the jurisdiction and motion to dismiss. *See id.* § 51.014(a)(5), (8) (West 2008) (allowing

5

governmental employees and employers to file interlocutory appeals in certain circumstances); *see also Reedy v. Pompa*, 310 S.W.3d 112, 114 n.1 (Tex. App.—Corpus Christi 2010) (noting that although section 51.014(a)(5) allows for interlocutory appeal of denial of employee's motion for summary judgment alleging immunity, courts have construed that provision as allowing interlocutory appeals "from rulings on other types of motions raising immunity issues, such as motions to dismiss"), *rev'd on other grounds*, No. 10-0306, 2011 Tex. LEXIS 76, at *2 (Tex. Jan. 21, 2011).

## STANDARD OF REVIEW

The issues raised in this appeal involve statutory construction, which is a question of law that is reviewed de novo. *See Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002); *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied). In construing a statute, we must ascertain the legislature's intent in enacting the statute. *Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). In making this determination, courts should look to the plain meaning of the words used in the statute. *See Fireman's Fund County Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69 (Tex. 2000). We presume that every word was deliberately chosen and that excluded words were left out on purpose. *USA Waste Servs.*, 150 S.W.3d at 494. When determining legislative intent, the entire act, not isolated portions, must be considered. *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998). We may also consider the "object sought to be attained" by enacting the statute and the "consequences of a particular construction." Tex. Gov't Code Ann. § 311.023 (West 2005); *see City of Austin v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002).

6

In addition, the Adjutant General alleges that Ngakoue's suit is barred by sovereign immunity. A claim of sovereign immunity is properly filed in a plea to the jurisdiction because sovereign immunity deprives a trial court of subject matter jurisdiction to consider the claim. *Miranda*, 133 S.W.3d at 225-26. A determination regarding subject matter jurisdiction and regarding whether the facts plead "affirmatively demonstrate a trial court's subject matter jurisdiction" are questions of law that are "reviewed *de novo*." *Id.* at 226. Similarly, a determination regarding "whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law." *Id.* "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id*. However, if the "pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* When reviewing a plea to the jurisdiction, courts are not limited solely to looking at the pleadings and may, instead, consider relevant evidence and "must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

**DISCUSSION**

On appeal, both Barnum and the Adjutant General assert that the trial court erred by failing to dismiss the suit against them. Regarding Barnum's motion to dismiss, they assert that Ngakoue failed to dismiss Barnum within the thirty-day deadline identified in subsection 101.106(f). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). In light of Ngakoue's initial decision to file suit against Barnum and in light of Ngakoue's alleged failure to properly and timely dismiss Barnum,

7

Barnum and the Adjutant General also contend that Ngakoue's suit against the Adjutant General "is forever barred" under subsection 101.106(b). *See id.* § 101.106(b). We will address their contentions in the order presented.

*Suit Against Barnum*

As mentioned above, Ngakoue initially filed suit against Barnum. In response, Barnum filed a motion to dismiss himself from the suit under subsection 101.106(f). *See id.* § 101.106(f). Although Ngakoue filed amended pleadings within the thirty-day deadline listed in subsection 101.106(f), Barnum and the Adjutant General both contend that the filing did not qualify as a motion to dismiss Barnum because it named Barnum as a defendant in the style of the case, referred to Barnum as a defendant, and did not explicitly request (other than in the title) that the trial court dismiss Barnum from the case.[1] Ngakoue, on the other hand, contends that his first amended petition is "substantially compliant" with the requirements listed in subsection 101.106(f) because it was filed within thirty days of Barnum filing his motion to dismiss, because it named the Adjutant General as a defendant, and because it contained a motion to dismiss Barnum. *See id.*

As a preliminary matter, we note that although Ngakoue insists that the trial court's order denying Barnum's motion to dismiss should be upheld, he also paradoxically asserts that he

---

[1] Almost two months after filing an amended petition, Ngakoue filed another amended petition. This one was entitled "Plaintiff's Second Amended Petition & Dismissal as to Defendant Franklin Barnum." Barnum and the Adjutant General contend that Ngakoue's second amended petition fails for the same reasons listed above and because it was filed more than thirty days after Barnum filed his motion to dismiss. Because the second amended petition was filed well past the thirty-day deadline mandated by subsection 101.106(f), we need not consider whether the second amended petition could be construed as a proper motion to dismiss Barnum. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (West 2005).

8

attempted to dismiss Barnum from the suit after Barnum filed his motion to dismiss. In fact, Ngakoue contends that this Court should liberally construe his amended petition "as an abandonment of any cause of action against Barnum." For that reason, Ngakoue also asserts that his petition should be deemed compliant with subsection 101.106 because the filing of his amended petition was "an obvious attempt to comply" with the statute. But, Ngakoue also contends that the trial court correctly decided not to dismiss Barnum from the suit. In any event, we ultimately conclude that the trial court erred by denying Barnum's motion to dismiss.

When determining the nature of a motion and the relief sought, courts do not look to the motion's caption or form; on the contrary, they look to the substance of the motion. *See In re Brookshire Grocery Co.*, 250 S.W.3d 66, 72-73 (Tex. 2008) (concluding that motion titled "Motion for New Trial" and that sought new trial as relief cannot be viewed as motion to modify judgment); *In re Guardianship of Archer*, 203 S.W.3d 16, 23 (Tex. App.—San Antonio 2006, pet. denied) (determining that although motions were titled pleas in abatement, substance argued that party lacked standing and capacity); *Finley v. J.C. Pace, Ltd.*, 4 S.W.3d 319, 320 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (construing motion as motion for new trial because motion "sought to set aside the existing judgment"). The substance of a motion is gleaned from the body of the motion and from the "prayer for relief." *Finley*, 4 S.W.3d at 320.

As mentioned above, Ngakoue's amended petition is partially entitled as a motion to dismiss Barnum. However, other than in the title, the petition makes no further reference to an intention to dismiss Barnum and does not request Barnum's dismissal in the prayer for relief. Moreover, the style of the petition lists Barnum as a defendant, and the body repeatedly refers to

9

Barnum as a defendant. In particular, the following individual references to Barnum as a defendant are found in the body:

> Michele Ngakoue . . . complaining of Franklin Barnum, the State of Texas and the Texas Adjutant General's Office, hereinafter referred to as Defendants;
>
> . . . .
>
> Defendant Franklin Barnum is an individual residing in Austin, Texas;
>
> . . . .
>
> A vehicle driven by Defendant Franklin Barnum . . . made an unsafe movement to the right and struck the Plaintiff's vehicle;
>
> . . . .
>
> [T]he foregoing described collision was proximately caused by the negligence of the above named Defendant Franklin Barnum in the following respects:
>
>> A. Defendant's executing an unsafe movement to the right.
>>
>> B. Defendant's failure to control the speed of the vehicle.
>>
>> C. Defendant's failure to keep a proper lookout.
>>
>> D. Defendant's failure to take evasive action to avoid the collision.
>>
>> E. Defendant's failure to make a timely application of his brakes to avoid the collision.

In addition to making individual references to Barnum as a defendant, the petition also makes several references to "the Defendants," which, as mentioned above, was a short-hand reference to the State, the Adjutant General, and Barnum collectively. In particular, the body of the petition states that Ngakoue is suing "the Defendants" for damages sustained from the car accident, and the prayer for relief provides, in relevant part, as follows: "[T]he Plaintiff prays that the Defendants be cited to

10

appear and answer herein, and that upon final hearing herein that the Plaintiff have judgment against the Defendants."

In light of the preceding, we must conclude that although Ngakoue's amended petition is partially entitled as a motion to dismiss Barnum, the substance of the filing demonstrates that it is not a motion to dismiss Barnum.

Ngakoue contends that even if he did not properly dismiss Barnum within the statutory deadline, the trial court did not err by failing to dismiss Barnum from the suit. Essentially, Ngakoue urges that in order to be entitled to dismissal, Barnum had to prove that he was acting in the course and scope of his employment when the accident occurred but that he failed to meet that burden. When Barnum filed his motion to dismiss, he attached an affidavit stating that the accident occurred while he "was performing [his] regular duties in the course and scope of [his] employment as a Maintenance Technician IV with" the Adjutant General and that the vehicle he was driving was "owned by [his] employer." Although Ngakoue acknowledges the affidavit, Ngakoue insists that Barnum failed to meet his burden because the affidavit contains no facts to support the otherwise conclusory statements. In addition, Ngakoue asserts that the affidavit is also ineffective because the statement regarding course and scope of employment is a legal conclusion, which Ngakoue, as a lay witness, may not testify to. *See* Tex. R. Evid. 701 (outlining permissible opinion testimony for non-expert witnesses).

Although Ngakoue now challenges whether Barnum established that he was acting within the course and scope of his employment, Ngakoue admitted that fact in his amended petition and made no assertion alleging the alternative. *See Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) (explaining that "[a]ssertions of fact, not pled in the alternative, in the live

11

pleadings of a party are regarded as formal judicial admissions" and that "[a]ny fact admitted is conclusively established in the case without the introduction of . . . other evidence"). In particular, Ngakoue asserted that the Adjutant General was not immune from suit in this case because the accident occurred "while Franklin Barnum was acting in the course and scope of his employment by the Texas Adjutant General's Office."[2] That admission is clear, deliberate, and unequivocal, *see Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996) (stating requirements for judicial admission in pleadings), and Ngakoue may not now challenge that admission by asserting that Barnum failed to satisfy his burden of proving that he was acting in the course and scope of his employment, *see Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980) (explaining that judicial admission in pleading is "conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it"). By admitting in his petition that Barnum was acting in the course and scope of his employment and then challenging the adequacy of Barnum's motion, Ngakoue attempts to do exactly what the legislature explicitly abolished through its amendment to section 101.106—plead alternative theories for recovery against a governmental employer and a governmental employee for the same conduct. *See Briggs*, 262 S.W.3d at 393.

In support of the trial court's denial of Barnum's motion to dismiss, Ngakoue also contends that the trial court's ruling was proper because Barnum did not file any special exceptions detailing the inadequacies in his amended petition and motion to dismiss. Specifically, Ngakoue contends that Barnum's failure to file any special exceptions waived his right to challenge any defect

---

[2]  Ngakoue makes a similar admission in his brief when he states that Barnum was "apparently acting in the course and scope of his employment."

in the petition. *See* Tex. R. Civ. P. 90 (stating that "[e]very defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing . . . shall be deemed to have been waived by the party seeking reversal on such account").

As described above, the amended petition clearly identifies who the defendants in the case are and specifies the basis for the suit, and Barnum makes no allegation that the amended petition did not plead a cause of action or provide fair notice of the facts in the case. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896-97 (Tex. 2000) (specifying requirements for pleadings). Instead of challenging a defect in the petition, Barnum asserts that Ngakoue failed to file a motion to dismiss within the thirty-day deadline as required by subsection 101.106(f). Ngakoue has not cited any authority for the proposition that a defendant must file a special exception to the failure to file a motion to dismiss, and we do not believe that the failure to specially except to the absence of a statutorily-required motion to dismiss could somehow toll the deadline by which the motion must be filed or waive the requirement altogether.

In addition, it is worth noting that the amended petition was filed in response to Barnum's motion asserting that he was improperly named as a party in the suit and should be dismissed from the suit. In other words, Barnum had already identified the defect prior to Ngakoue filing his amended petition. Barnum's motion to dismiss also quoted the text of subsection 101.106(f), stated that Ngakoue's suit will be dismissed unless he files a motion dismissing Barnum from the case, and warned that Ngakoue's motion to dismiss must be filed within thirty days; however, Ngakoue did not dismiss Barnum from the suit.[3]

---

[3] In another argument involving special exceptions, Ngakoue argues that the trial court's order denying Barnum's motion to dismiss was proper because the motion failed to provided

In light of Ngakoue's admission that the accident occurred in the scope of Barnum's employment and in light of our determination that Ngakoue failed to file a motion to dismiss Barnum within the thirty-day deadline listed in subsection 101.106(f), we must conclude that the district court erred by denying Barnum's motion to dismiss.[4] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).

For these reasons, we sustain the first issue on appeal.

---

Ngakoue with "fair notice" regarding the manner in which he "failed to comply with" section 101.106. Further, he contends that when he later filed special exceptions to Barnum's motion highlighting the lack of fair notice, Barnum did not amend his filings. For that reason, Ngakoue insists that the trial court's ruling on the motion should be upheld.

As a preliminary matter, we note that under the circumstances present in this appeal, it is not readily apparent that failing to amend a motion to dismiss in response to the filing of special exceptions could result in the type of waiver urged by Ngakoue. In any event, we would be unable to conclude that the motion did not provide fair notice regarding the manner in which Ngakoue failed to comply with section 101.106. As described above, Barnum's motion referred to and quoted subsection 101.106(f), stated that Ngakoue filed suit against him for actions occurring "within the course and scope of his employment," and urged that the suit against him must be dismissed under subsection 101.106(f) unless Ngakoue "files amended pleadings dismissing the employee and naming the governmental unit as a defendant" within thirty days.

[4] In his brief, Ngakoue asserts that the trial court properly denied Barnum's motion to dismiss "because of variances between the pleading and proof." Essentially, Ngakoue contends that in "Barnum's Supplemental Responses to Requests for Disclosure," Barnum named only himself and Ngakoue as parties to the suit. In other words, Barnum failed to specify that the Adjutant General was a potential party to the suit. For that reason, Ngakoue insists that there is a "fatal" variance between these discovery responses and the allegations in the motion to dismiss. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (stating that "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised").

However, Barnum's response to the requests for disclosure was not included in the appellate record. *See* Tex. R. App. P. 34 (explaining that appellate record consists of clerk's record and, "if necessary to the appeal, the reporter's record"). With certain exceptions not applicable here, "appellate courts may not consider matters outside the appellate record." *Fox v. Wardy*, 234 S.W.3d 30, 33 (Tex. App.—El Paso 2007, pet. dism'd w.o.j.). Further, we note that the filings by Barnum that were included in the record repeatedly assert that the Adjutant General should have been named in the suit and that Barnum should have been dismissed.

14

*Suit Against the Adjutant General*

Having determined that the trial court erred by failing to grant Barnum's motion to dismiss, we must now address whether the trial court erred by denying the Adjutant General's plea to the jurisdiction and motion to dismiss. This issue necessarily turns on the resolution of what, at least initially, appears to be conflicting statutory directives listed in subsections 101.106(b) and 101.106(f).

As described above, both subsections address situations in which a plaintiff has elected to sue a governmental employee. Subsection 101.106(b) provides that the "filing of a suit" against an employee "constitutes an irrevocable election . . . and immediately and forever bars any suit or recovery against" the governmental employer. *Id.* § 101.106(b). When addressing the meaning of this statutory provision, the appellate courts in *Briggs* and *Texas Department of Agriculture v. Calderon* reasoned that when a plaintiff files suit against an employee, the plaintiff makes an irrevocable choice that forever bars any suit against a governmental entity. 262 S.W.3d at 393-94; 221 S.W.3d 918, 921 (Tex. App.—Corpus Christi 2007, no pet.), *overruled on other grounds*, *Franka*, 2011 Tex. LEXIS 70, at *39-40 n.67. Further, the court in *Briggs* determined that the "bars any suit" language chosen by the legislature in subsection 101.106(b) "operates as an unequivocal grant of immunity to a governmental unit." 262 S.W.3d at 393-94; *see Calderon*, 221 S.W.3d at 921 (stating that although subsection 101.106(b) does not contain word "'immunity,' . . . it is an immunity statute"). In other words, the courts determined that once a plaintiff sues an employee, subsection 101.106(b) becomes effective and forever bars a governmental entity from suit. *Briggs*, 262 S.W.3d at 394; *Calderon*, 221 S.W.3d at 922.

15

Although the courts in *Briggs* and *Calderon* both agreed that subsection 101.106(b) bestows permanent immunity upon a governmental employer from the moment that a plaintiff files suit against a governmental employee, both courts agreed that the immunity is subject to removal through subsection 101.106(f).  262 S.W.3d at 394; 221 S.W.3d at 923.  As mentioned above, subsection 101.106(f) applies to circumstances in which a plaintiff elects to sue an employee, but it provides the employee with the option of removing himself from the suit in certain circumstances. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).

When discussing the interplay between subsections 101.106(b) and 101.106(f), the court in *Briggs* reasoned that subsection 101.106(f) may lift the otherwise permanent immunity granted by subsection 101.106(b) if the governmental employee seeks dismissal from the suit, if the alleged conduct occurred in the scope of the employee's employment, and if the suit could have been brought against the employer "under the Act."  262 S.W.3d at 394.  However, both courts warned that in order to pierce the immunity bestowed by subsection 101.106(b), the plaintiff "must comply with the procedural requirements of subsection" 101.106(f).  *Id.*; *Calderon*, 221 S.W.3d at 923. Importantly, the plaintiff "must file an amended pleading that *both* dismisses the employee and substitutes the governmental unit as the defendant within thirty days of the employee's motion to dismiss." *Briggs*, 262 S.W.3d at 394; *see Calderon*, 221 S.W.3d at 923.  Further, the *Briggs* court explained that if the plaintiff does not timely file an amended pleading that dismisses the employee and substitutes the governmental entity, then the "protections of subsection [101.106](b) do not disappear." *Briggs*, 262 S.W.3d at 395.  Accordingly, "the protections . . . are still available to the governmental unit," and "a plea to the jurisdiction by the governmental unit should be sustained." *Id.*  Under the interpretation adopted in *Briggs* and *Calderon*, the failure to file within the statutory

16

deadline amended pleadings that complied with both procedural requirements bars recovery against the employee and the employer.

If we applied that analysis in the present case, we would have to conclude that the district court should have granted the Adjutant General's plea to the jurisdiction. Ngakoue failed to file amended pleadings that *both* dismissed Barnum and named the Adjutant General as a defendant within the thirty-day deadline. Accordingly, Ngakoue failed to comply with the requirements necessary to remove the immunity from suit bestowed on the Adjutant General by subsection 101.106(b) when Ngakoue elected to file suit against Barnum.

Although the analysis undertaken in *Briggs* and *Calderon* is consistent with the legislative intent requiring plaintiffs to carefully choose whether to sue a governmental employer or its employee, we note that the analysis employed by those courts does not seem to give effect to all of the statutory language in section 101.106. In particular, the construction reached by the courts in *Briggs* and *Calderon* seems to ignore the import of the legislature's repeated emphasis in subsection 101.106(b) of barring future suits against governmental employers. As detailed above, the legislature specified that the filing of a suit against an employee *immediately*, *irrevocably*, and *forever* bars any suit against the governmental entity. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(b). It is hard to imagine language that the legislature could have chosen that would more strongly convey the concept of permanent immunity or emphasize the magnitude of the decision regarding what party to sue.

Moreover, subsection 101.106(f) makes no reference to subsection 101.106(b) or otherwise suggests that it is an exception to the permanent immunity established under subsection 101.106(b). Similarly, subsection 101.106(b) does not contain any language indicating that the

17

permanent immunity bestowed by that provision is subject to removal through subsection 101.106(f) or any other provision for that matter. In fact, the only explicit exception to the permanent immunity from suit bestowed by subsection 101.106(b) is found in that same subsection. Specifically, the provision provides that even though a plaintiff filed suit against a governmental employee, the plaintiff may file suit against the governmental employer but only if "the governmental unit consents." *Id.*

Resolution of the directives in subsections 101.106(b) and 101.106(f) is further compounded by the fact that the meaning of the phrase "governmental unit consents" in the context of this statute is not entirely clear. At first glance, the use of the term "consents" would seem to indicate that the legislature was contemplating actions establishing consent that occur *after* a plaintiff files suit against an employee. *Id.* For example, the legislature might have been pondering situations in which it would agree to waive immunity for a particular suit or circumstances in which the governmental employer itself has the authority to waive immunity and agrees to waive it in a particular case. That construction is supported by the definition of "governmental unit," which includes entities that potentially have the authority to consent to suit. *Id.* § 101.001(3) (defining "governmental unit" as including State and political subdivisions of State, including cities).

Although not directly confronted with determining the interplay between subsections 101.106(b) and 101.106(f), the supreme court recently hinted that the term "consents" in subsection 101.106(b) can refer to situations in which a governmental employer consents to a specific suit. *See Mission Consol.*, 253 S.W.3d 653. In *Mission Consolidated*, a plaintiff sued a school district and a superintendent in the same suit. *Id.* at 654-55. When assessing whether subsection 101.106(b) barred recovery against the school district due to the plaintiff's decision to sue a district employee

18

as well, the court noted that the district "itself did not consent to" the suit. *Id.* at 660; *see also Franka*, 2011 Tex. LEXIS 70, at *30 (summarizing *Mission Consolidated* and noting that district had not consented to suit).

This construction would give full effect to the permanent and immediate immunity bestowed under subsection 101.106(b), but it would harshly limit the circumstances in which a plaintiff could maintain a suit against a governmental employer after initially filing suit against an employee. *Cf. Franka*, 2011 Tex. LEXIS 70, at *50 (stating that "restrictions on government employee liability have always been part of the tradeoff for" the Tort Claims Act's "waiver of immunity, expanding the government's own liability for its employees' conduct"). Even if the plaintiff filed the amended pleadings specified in subsection 101.106(f) within the thirty-day deadline, the plaintiff's suit against the employer would be subject to dismissal under subsection 101.106(b) unless the legislature or the governmental employer (if able to) consents to being sued. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(b). Given the unlikelihood that consent to suit would be given after a plaintiff initially files suit against a governmental employee, a plaintiff's election to file suit against an employee and then file amended pleadings under subsection 101.106(f) would likely permanently extinguish a plaintiff's ability to recover against either the governmental employer or its employee.[5]

---

[5] Rather than amend his pleadings, the plaintiff could instead choose to argue that the requirements for dismissal under subsection 101.106(f) were not satisfied. *Huntsville Indep. Sch. Dist. v. Briggs*, 262 S.W.3d 390, 394-95 (Tex. App.—Waco 2008, pet. denied); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). If the trial court agreed with the plaintiff, then the employee would not be entitled to dismissal, and the plaintiff's suit against the employee could proceed. If the court disagreed, the suit against the employee would be dismissed.

19

Under this resolution of the directives in subsections 101.106(b) and 101.106(f), the trial court erred by failing to grant the Adjutant General's plea to the jurisdiction. Ngakoue first filed suit against Barnum, and neither the legislature nor the Adjutant General has agreed to allow the subsequent suit against the Adjutant General.

In the absence of further guidance regarding the interplay between subsections 101.106(b) and 101.106(f), we would adopt the construction described above because it seems to give the most effect to all of the words used in those provisions. However, in this case, we are not limited solely to consideration of the words used in the statute because the supreme court has provided a binding interpretation of subsection 101.106(b). Although the supreme court in *Mission Consolidated* indicated that "consents" can refer to circumstances in which a governmental employer allows itself to be sued, the court later determined that "consents" can also have a different meaning as it is used in subsection 101.106(b). In particular, the court later determined that consent to suit had been given because the legislature, on behalf of the district, had statutorily waived immunity for the cause alleged against the district through the passage of the Texas Commission on Human Rights Act. *Mission Consol.*, 253 S.W.3d at 660; *see also* Tex. Lab. Code Ann. §§ 21.001-.556 (West 2006 & Supp. 2009) (containing provisions of Texas Commission on Human Rights Act). In other words, subsection 101.106(b) did not bar a suit against the district because the legislature had previously waived immunity and, thereby, given its consent to suit through its prior statutory waiver of immunity.[6]

---

[6] It is worth noting that another possible interpretation for the word "consents" was postulated in the dissenting opinion to a recent supreme court opinion. *See Franka v. Velasquez*, No. 07-0131, 2011 Tex. LEXIS 70, at *62-63, 78-79 (Tex. Jan. 21, 2011) (Medina, J., dissenting).

Under *Mission Consolidated*, subsection 101.106(b) simply stands for the proposition that after initially filing suit against a governmental employee, a plaintiff may not subsequently sue the governmental employer unless the subject matter of the suit falls under a waiver of immunity previously enacted by the legislature. The supreme court's inclusion of prior waivers of immunity within the meaning of the phrase "unless the governmental unit consents" ignores the legislature's decision to use the present tense of the word "consents." *See* Tex. Gov't Code Ann. § 311.012(a) (West 2005) (explaining that when construing statutes, courts should presume that "[w]ords in the present tense include the future tense"). In addition, this construction of the term "consents" in subsection 101.106(b) seems to eliminate any real effect to the provision because plaintiffs have always been prohibited from suing governmental employers when immunity has not been waived. Stated differently, subsection 101.106(b) only bars subsequent suits against governmental employers that were already barred through the doctrine of sovereign immunity. Accordingly, if a plaintiff first elects to sue a governmental employee, subsection 101.106(b) does not bar the filing of a subsequent suit against a governmental employer regarding the same subject matter if the legislature previously

The dissent in *Franka* noted that the government generally consents to suit through legislation and reasoned that subsection 101.106(f) outlines the procedure for obtaining consent to suit in cases in which a plaintiff initially files suit against a governmental employee but then later attempts to file suit against the governmental employer in response to the employee's motion to dismiss. *Id.* at *62-63. Essentially, the dissent determined that although subsection 101.106(b) would prohibit a plaintiff from filing suit against a governmental employer after initially suing an employee unless the employer consented to suit, the employer's consent is obtained by complying with the requirements of subsection 101.106(f): dismissing the employee and naming the employer within thirty days. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). In other words, the State, on behalf of all governmental units, has consented to be named in suits originally filed against a governmental employee but "that consent terminates 30 days after the filing of the employee's motion to dismiss." *Franka*, 2011 Tex. LEXIS 70, at 78, 78-79 n.12.

21

waived immunity for the alleged cause or causes of action. Given the apparent recognition that a governmental employer could itself agree to be sued in certain circumstances, the construction of subsection 101.106(b) adopted in *Mission Consolidated* would also seem to authorize suits against governmental employers for which immunity has not been statutorily waived provided that the employer itself consents to the suit.

Because the construction of subsection 101.106(b) offered under *Mission Consolidated* seems to authorize subsequent suits against governmental employers after a plaintiff filed suit against an employee, the construction is inconsistent with the strong language in the remainder of the opinion regarding the purpose of the amendment to section 101.106 as well as the barring language found in other portions of section 101.106. Other than the portion of the opinion seemingly authorizing subsequent suits against governmental employers, the remainder of the discussion in *Mission Consolidated* regarding section 101.106 explains that when a plaintiff chooses to file suit against an employer or an employee, he makes an irrevocable election that cannot be undone. For example, the supreme court stated that the purpose of the revision "was to force a plaintiff to decide at the outset whether" to sue a governmental employer or its employee, that the provision required "a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit . . . or proceeding against the employee alone," and that the legislature now forces "plaintiffs to make an irrevocable election at the time suit is filed." 253 S.W.3d at 657.

Similarly, the language in the other parts of section 101.106 evidence an intention to prohibit plaintiffs from originally pursuing relief from an employer or employee and then later substituting the other party. The mirror provision to subsection 101.106(b) forever bars the filing of

22

a suit against a governmental employee after the plaintiff files suit against the governmental employer. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). Similarly, subsections 101.106(c) and 101.106(d) forever prohibit a plaintiff from suing a governmental employee if a settlement is obtained from the employer and also bar a plaintiff from obtaining a judgment or recovery against a governmental employer if the plaintiff obtains a judgment against a governmental employee. *Id.* § 101.106(c), (d). Unlike the construction of subsection 101.106(b) adopted under *Mission Consolidated*, the other provisions of section 101.106 impose permanent consequences to decisions regarding whether to pursue an action against an employee or an employer.

Even though the construction offered in *Mission Consolidated* seems problematic and inconsistent with the language of section 101.106, we are bound by that construction nonetheless. Accordingly, we must conclude that the district court properly denied the Adjutant General's plea to the jurisdiction. This suit stems from a car accident between Ngakoue and one of the Adjutant General's employees, and the legislature has expressly waived sovereign immunity in these circumstances. *See id.* § 101.021(1). Thus, under *Mission Consolidated*, the legislature has consented to suit in these circumstances and the "forever" bar under subsection 101.106(b) does not apply. *Cf. Bailey v. Sanders*, 261 S.W.3d 153, 157 (Tex. App.—San Antonio 2008, no pet.) (concluding that substituting governmental employer for employee was proper because claim alleged fell under Act's waiver of immunity and noting that government conveys consent to suit through legislation). Therefore, Ngakoue was free to file suit against the Adjutant General under subsection 101.106(b) even though he had previously filed suit against Barnum.

For these reasons, we overrule the second issue presented on appeal.

23

**CONCLUSION**

Having sustained the first issue on appeal, we reverse the district court's order denying Barnum's motion to dismiss and render judgment dismissing the suit against Barnum. Further, having overruled the second issue on appeal, we affirm the district court's order denying the Adjutant General's plea to the jurisdiction and motion to dismiss. Accordingly, we remand this case to the trial court for further proceedings.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson
  Justice Patterson Not Participating

CV 03-09-00086                Reversed and Rendered

CV 03-09-00087                Affirmed

Filed:   April 29, 2011